UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 16 CR 463-11 |
| v. | |
| ISRAEL MATA, a/k/a "Iz" | Judge Virginia M. Kendall |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, respectfully submits the following sentencing memorandum for defendant Israel Mata, who was a member of the Latin Kings for approximately 14 years. During that time, Mata conspired with other members of the Latin Kings to commit acts of violence and possessed firearms on several occasions. For example, in March 2005, Mata shot a suspected rival and was later sentenced to 8 years' imprisonment for aggravated battery with a firearm. Undeterred by that sentence, in December 2012, Mata was involved in a violent bar fight with members of a rival gang—which is the basis for his conviction on Count 4 (assault in aid of racketeering activity).

Consistent with the § 3553(a) factors, a sentence within the applicable guidelines of 168 to 210 months (assuming acceptance of responsibility) is necessary to reflect the seriousness of Mata's offense conduct, promote respect for the law, and deter Mata and others from engaging in gang violence.

1

## I.     Mata's Role in the Latin Kings[1]

### A.     Racketeering conspiracy (Count 1)

Mata pled guilty to Count 1 based on the following factual admissions from his plea declaration:

> Mr. Mata admits that he was a member of the Latin Kings during the charged time period from about 1999 to September 2013, excluding periods in which he was incarcerated.[2]

> During that period, Mr. Mata knowingly agreed he would commit at least two racketeering acts in furtherance of the conspiracy including acts of violence and illegal possession of weapons…During this period, Mr. Mata also knowingly agreed that co-conspirators would commit at least two racketeering acts, including but not limited to, drug trafficking, assault on rival gang members and other violent conduct.

Dkt. 1325 at ¶ 7 (line breaks modified).

### B.     Mata's assault in aid of racketeering activity (Count 4)

Mata pled guilty to Count 4 based on the following factual admissions from his plea declaration:

> [O]n or about December 2, 2012, Mr. Mata and other Latin Kings attacked and battered Latin Dragons near a bar in Burnham, Illinois. Mr. Mata acknowledges the victim sustained serious bodily injury as a result of the stabbing. Mr. Mata further acknowledges that the attack was to maintain his position in the Latin Kings and the position of the other involved Latin Kings because Latin Kings were expected to attack rival gang members.

---

[1] The sources of information in this section are Mata's plea agreement (Dkt. 1325), the government's version of the offense ("GVO"), the presentence investigation report ("PSR"), and the transcript of the March-April 2019 trial in this case ("[Witness] Tr.").

[2] According to trial testimony, in approximately the early 2000s, Mata joined the 97th Street chapter of the Latin Kings. Chavez Tr. 423. In approximately 2012 or 2013, Mata transferred to the Roseland chapter. Delgado Tr. 3326.

*Id.* ¶ 7.

The government's version of the offense summarized additional evidence about that violent assault. Specifically, according to plea agreements entered by three codefendants[3] and the trial testimony of Fernando Chavez (*see* GVO at Exhibit E), on December 2, 2012, Mata was near a bar in Burnham, Illinois, and saw several members of the rival Latin Dragons gang. Mata called Chavez to report the rival gang members being present in the area and asked for assistance in attacking them.

Soon thereafter, Chavez arrived in the area with Latin Kings Edgar Gonzalez and Raymond Vasquez as well as another individual. Upon their arrival, Mata and the other Latin Kings began to fight with the Latin Dragons and the other individuals accompanying them. Together with Chavez, Mata physically assaulted and beat at least one of the victims, who sustained wounds in several areas.

During the fight, Edgar Gonzalez used a knife to stab Victim H in the neck. As a result, Victim H suffered serious bodily injury that required hospitalization and left a permanent scar.

## C.   Mata's other gang-related activities

The government's version of the offense also detailed Mata's involvement in several gang-related activities that are relevant conduct under Guideline § 1B1.3.

---

[3] *See* Dkt. 1078 (Fernando Chavez plea) at 10-12; Dkt. 1065 (Raymond Vasquez plea) at 8-10; Dkt. 1318 (Edgar Gonzalez plea) at 8.

<u>Witness intimidation (1999)</u>

According to the grand jury testimony of Ivan Quiroz (*see* GVO at Exhibit A, pp. 4-8), in approximately 1999, co-defendant Jose Jaramillo shot and killed a suspected Gangster Disciple. Before Jaramillo's murder trial, members of the Pullman Chapter held a meeting to discuss whether a Latin King named Jose Cano was cooperating against Jaramillo. Mata and other Latin Kings confronted Cano and beat him, including stomping on his head and using a cigarette to burn him. Mata filmed the beating of Cano for a Latin King who wanted to participate, but could not be there in person.

<u>Shootings of rival gang members (1999)</u>

According to the Quiroz's grand jury testimony (*see* GVO at Exhibit A, pp. 13-14), in approximately 1999, Mata and Quiroz were at the house of another Latin King. They saw members of the Latin Counts, a rival gang, approximately two blocks away. Mata and Quiroz drove Quiroz's vehicle to do a drive-by shooting. As they drove by the Latin Counts, Mata used a .44 Magnum handgun to shoot at the Latin Counts. Mata later heard that no one had been hit during the shooting.

A few months later, Mata and Quiroz were in Roseland near 115th Street. Members of the Gangster Disciples, a rival gang, drove by and got into it with another Latin King. In response, Mata and Quiroz jumped in Quiroz's vehicle and followed the Gangster Disciples. Mata shot at the Gangster Disciples with a .380 handgun.

Mata later heard over the police scanner that one of the Gangster Disciples was shot in his lower body.

### Unlawful possession of a firearm (2000)

According to the police reports attached to the GVO as Exhibit B, on December 19, 2000, Mata was arrested for possession of a .22 caliber pistol. When Mata was approached by officers, he fled through a residence, but was eventually apprehended. Upon apprehension, Mata told the officers something to the effect of, "I bought it last week for protection." Mata was sentenced to one year of imprisonment for aggravated unlawful use of a weapon as a result of this offense.[4]

### Stabbing of rival gang member (2001)

According to the police reports attached to the GVO as Exhibit C, on January 4, 2001, Mata approached a suspected rival gang member, displayed gang signs, and asked the victim, "Why are you over here?" Mata entered the victim's vehicle and stabbed the victim with a box cutter, causing lacerations to the victim's left hand, left arm, and left leg. Mata was sentenced to four years' imprisonment for unlawful vehicular invasion as a result of this offense.

### Shooting of suspected rival gang member (2005)

According to the police report attached to the GVO as Exhibit D, on March 13, 2005, Mata used a .357 revolver to shoot a suspected rival gang member on the 2800

---

[4] Pursuant to Guideline § 2E.1, Application Note 4, the racketeering activities for which Mata was previously convicted and are "treated as a prior sentence under §4A1.2(a)(1) and not as part of the instant offense."

block of East 84th Street in Chicago. The victim was shot in the left and right arms. As Mata fled in a car that was driving erratically, he was stopped by police officers near 3000 East 84th Street. When the officers attempted to curb the vehicle, Mata threw a blue-steel, .357 revolver from the vehicle. His vehicle was stopped and he was arrested. Mata was sentenced to eight years of imprisonment for aggravated battery with a firearm as a result of this offense.

Shooting of other Latin Kings (2013)

According to Chavez's grand jury testimony (*see* GVO at Exhibit F), in approximately 2013, Mata was at the Horseshoe Casino in Indiana and was followed by a Grand Prix that contained members from the Roseland chapter. Mata was in bad standing with the Roseland chapter and believed he was going to be attacked by his own gang members, so he called Chavez for assistance.[5] Chavez and Latin King Dean Trevino drove to the Horseshoe Casino to help Mata. One of the occupants of the Grand Prix shot at Mata, and he responded by chasing the Grand Prix and using a firearm to repeatedly shoot at the Grand Prix. Mata followed the Grand Prix back to the Roseland neighborhood and saw the car's occupants exiting the car. Mata shot at them a few more times and then left the area.

Mata claims that he stopped associates with the Latin Kings after this incident because he feared for his life. PSR ¶ 20.

---

[5] In his version of the offense, Mata states that in approximately 2014, he was the target of a "shoot on sight" order because he had missed several gang meetings. PSR ¶ 16.

## II.     Sentencing Guidelines Calculations

### A.     Offense level

<u>Conspiracy to commit murder</u>

The Probation Office has correctly determined that the base offense level is 33, pursuant to Guideline §§ 2A1.5 and 2E1.1(a)(2), because the offense involved conspiracy to commit murder. PSR ¶¶ 29-32; *see also United States v. Porraz*, 2019 WL 6336938, at *1 (7th Cir. Nov. 27, 2019) (affirming this Court's application of the guideline for conspiracy to commit murder guideline because defendant's "admitted conduct defeats his claim that murder was not a reasonably foreseeable part of his gang activities"); *United States v. Garcia*, 754 F.3d 460, 484-85 (7th Cir. 2014).

<u>Assault in aid of racketeering activity</u>

The Probation Office has correctly determined that he total adjusted offense level for Count 4 is 23 (PSR ¶¶ 38-47), which is disregarded because it is 9 or more levels less serious that the Group with the highest offense level (*id.* ¶ 48).

<u>Acceptance of responsibility</u>

The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

### B.     Criminal history category

The Probation Office has correctly determined that Mata has 14 criminal history points, placing him in Category VI, based on the following prior convictions

- On or about July 16, 2001, Mata was sentenced to 1 year of imprisonment in the Circuit Court of Cook County, Illinois, as a result of his conviction for aggravated unlawful use of a weapon. This conviction was based on an arrest made on or about December 19, 2000. PSR ¶ 63. Pursuant to Guideline § 4A1.2 app. note 6, Mata receives 0 criminal history points for this sentence. *Id.*

- On or about July 16, 2001, Mata was sentenced to 4 years' imprisonment in the Circuit Court of Cook County, Illinois, as a result of his conviction for unlawful vehicular invasion. This conviction was based on an arrest made on or about January 30, 2001. PSR ¶ 64. Pursuant to Guideline § 4A1.1(a), Mata receives 3 criminal history points for this sentence.

- On or about April 17, 2003, Mata was sentenced to 3 months of court supervision in the Circuit Court of Cook County, Illinois, as a result of his conviction for giving alcohol to a minor (a municipal ordinance violation). Pursuant to Guideline § 4A1.2(c)(2), Mata receives 0 criminal history point for this sentence. PSR ¶ 65.

- On or about January 11, 2006, Mata was sentenced to 8 years' imprisonment in the Circuit Court of Cook County, Illinois, as a result of his conviction for aggravated battery with a firearm. Pursuant to Guideline § 4A1.1(a), Mata receives 3 criminal history points for this sentence. PSR ¶ 66.

- On or about June 6, 2009, Mata was sentenced to 6 years' imprisonment in the Superior Court of Lake County, Criminal Division, Crown Point, Indiana, as a result of his conviction for carrying a handgun without a license. Pursuant to Guideline § 4A1.1(a), Mata receives 3 criminal history points for this sentence. PSR ¶ 67.

- On or about June 16, 2011, Mata was sentenced to 12 months of court supervision in the Circuit Court of Cook County, Illinois, as a result of his conviction for mob action. Pursuant to Guideline § 4A1.2(c)(1), Mata receives 1 criminal history point for this sentence. PSR ¶ 68.[6]

- On or about August 10, 2011, Mata was sentenced to 1 year of supervision in the Circuit Court of Cook County, Illinois, as a result of his conviction for not having a valid driver's license. Pursuant to guideline 4A1.2(c)(1), Mata receives 0 criminal history points for this sentence. PSR ¶ 69.

---

[6] For present purposes, the government does not dispute the Probation Office's determination that mob action is similar to disorderly conduct. PSR ¶ 68.

- On or about May 21, 2015, Mata was sentenced to 4 years' imprisonment in the Superior Court of Lake County, Criminal Division, Crown Point, Indiana, as a result of his conviction for unlawful possession of a firearm by a felon. Pursuant to Guideline § 4A1.1(a), Mata receives 3 criminal history points for this sentence. PSR ¶ 70.

- Because the Mata committed the instant offense while under a criminal justice sentence, specifically, the sentences identified above, he receives 2 criminal history points pursuant to Guideline § 4A1.1(d). PSR ¶ 72.

## C. Guidelines range

If the Court determines that Mata qualifies for an adjustment under Guideline § 3E1.1 for acceptance of responsibility, his advisory guidelines range will be 168 to 210 months' imprisonment. PSR ¶ 124.

If the Court determines that Mata does not qualify for acceptance of responsibility, his guidelines range will be 235 to 293 months.

The statutory maximum sentence on each count of conviction if 240 months. PSR ¶ 123.

## III. Section 3553(a) Factors

## A. Seriousness of the Offense

Violent crime and gang activity are persistent problems in this district that jeopardize public safety, impose economic harm, and instill fear. Through his involvement with the Latin Kings, Mata was part of the gang violence problem in this district for nearly 15 years. Mata was an active participant in the Latin Kings' use of violence against suspected rivals and against fellow gang members who were suspected of cooperating with law enforcement (e.g., Mata's participation in the

beating of Jose Cano in approximately 1999).

Mata's criminal history provides a partial window into his gang related activities. In December 2000, Mata was arrested for possessing a .22 caliber handgun and ammunition. PSR ¶ 63. Only one month later, in January 2001, Mata was arrested for the incident where he stabbed a suspected rival with a box cutter and received a 4-year prison sentence. *Id*. ¶ 64.

That sentence had no deterrent effect on Mata. In March 2005, he again shot at a suspected rival—this time hitting his victim—and received a sentence of 8 years' imprisonment for aggravated battery with a firearm. *Id*. ¶ 66.

Upon paroling out of IDOC custody in September 2008, Mata quickly returned to engaging in violent acts. In January 2009, Mata carried a handgun into a bar and pointed that gun at a security guard who asked him to leave. PSR ¶ 67. Mata received a 6-year prison sentence for that conduct. *Id*.

In December 2012, around the time he paroled out of state custody on that sentence, Mata was involved in the violent bar fight with rival gang members that is the basis for his conviction on Count 4.

One year later, in December 2013, Mata was driving while intoxicated and possessed a loaded 9-millimeter pistol. PSR ¶ 70.

In summary, Mata's offense conduct was deadly serious and spanned nearly 15 years. He possessed guns, shot at rivals, and remained undeterred by the prison sentences he received along the way. His sentence in this case needs to send a

stronger deterrent signal than any of his prior sentences and promote respect for the law, which Mata was clearly lacking during his years as a Latin King.

### B.     History and Characteristics of the Defendant

Mata was born in 1982 and lived with his parents until age 11, when they divorced. PSR ¶ 87. Although Mata's material needs were met, his home life was unstable because of his father's alcoholism and violence towards his mother and older brother. *Id*. ¶ 90. Those events no doubt had a scarring effect on Mata and left him without a strong male role model. Mata has since developed a good relationship with his mother and his two brothers. *Id*. ¶ 91.

Mata dropped out of high school during his freshman or sophomore year. *Id*. ¶ 110. A short time later, in the late 1990s, Mata joined the Latin Kings and remained a member for nearly 15 years.

Mata's work history shows that he could have chosen a different path. He has experience working as a machine operator, packer, and stock organizer. *Id*. ¶¶ 115-118. And during his time in custody on this case, Mata has taken a commercial driver's license course. *Id*. ¶ 113.

Today, Mata is 38 years old. He has a history of alcoholism and has also expressed interest in substance abuse treatment. *Id*. ¶¶ 104, 107. He has several physical health conditions and takes an antidepressant. *Id*. ¶¶ 100-101.

Even after a lengthy prison sentence in this case, Mata will likely be in his late 40s upon release. He will have a chance to rebuild his life and make better choices

11

than the ones that led to his conviction in this case.

### C.   The Need to Provide Just Punishment, Promote Deterrence, and Protect the Public from Further Crimes of the Defendant

Mata's sentence must reflect the seriousness of his offense conduct—nearly 15 years of membership in a violent street gang, including multiple acts of violence.

Deterrence is also a paramount consideration in this case given Mata's long pattern of recidivism. His prior custodial sentences did not deter him from reoffending and continuing to engage in violence. Mata is someone who has demonstrated that only a custodial sentence will stop his violent behavior.

Mata's sentence also needs to send a strong deterrent signal into the community and promote respect for the law. Mata was a Latin King for nearly 15 years, engaged in several acts of violence, and did not slow down despite receiving several state prison sentences. Anyone who is tempted follow Mata's path and join a violent street gang—whether for mutual protection, a sense of identity, or just a desire to engage in senseless violence—needs to understand that such a path will result in a serious prison sentence.

### D.   Need to Avoid Unwarranted Sentencing Disparities

Congress' basic statutory goal in establishing the Sentencing Guidelines was to diminish excessive disparity and to promote increased uniformity in sentencing. Accordingly, a sentence linked to the guidelines will serve to minimize unwarranted disparities between Mata and similarly situated defendants.

In addition, a within-guidelines sentence is appropriate for Mata given the

12

length of his membership in the gang and his participation in multiple acts of violence.

## IV.    Supervised Release

The government supports the Probation Office's recommendation to impose a three-year term of supervised release with all of the recommended conditions, which are appropriate under the § 3553(a) factors given Mata membership in the gang for nearly 15 years and his need for alcohol and substance abuse treatment. The conditions will also provide needed deterrence to criminal conduct, protect the public from further crimes of the defendant, and keep the probation officer informed of the defendant's conduct, condition, and compliance.

## V.    Conclusion

For the reasons stated above, the government respectfully requests that the Court impose a sentence within the guidelines range of 168 to 210 months, a 3-year term of supervised release, and a $100 special assessment.

Dated: July 19, 2021                            Respectfully submitted,

                                                JOHN R. LAUSCH, JR.,
                                                United States Attorney

                              By:    */s/ Grayson Sang Walker*
                                                JOHN D. COOKE
                                                BRIAN J. KERWIN
                                                GRAYSON SANG WALKER
                                                ASHLEY A. CHUNG
                                                Assistant United States Attorneys
                                                219 South Dearborn Street
                                                Chicago, Illinois 60604